RIEFKOHL, APPELLANT, *v.* REGISTRAR OF CAGUAS, RESPONDENT.

APPEAL from a Decision of the Registrar of Property Refusing to Record a Mortgage.

No. 399.—Decided May 19, 1919.

RECORD OF TITLE—INHERITANCE TAX—EXEMPTION.—In order that title to inherited property of whatever value may be recorded in the registry, it is necessary to present to the registrar a receipt showing the payment of the inheritance tax or a document demonstrative of exemption from such payment, in accordance with section 379 of the Political Code.

The facts are stated in the opinion.

*Mr. Rafael Arce* for the appellant.

The respondent appeared by brief.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

By an order of December 18, 1918, the District Court of Humacao designated as the sole and universal heirs of Plácido Muñoz y Muñoz, who died intestate on September 3 of the same year, his three children named María Josefa Acacia Concepción, Guillermo Ernesto Vicente and Alma Rosenda Muñoz Riefkohl, in equal parts, and the surviving spouse, Julia Riefkohl y López, in usufruct according to law.

The widow, Julia Riefkohl López, presented a certified copy of that order in the Registry of Property of Humacao accompanied by a written request dated December 26, 1918, for record in her name and in the names of her children of a mortgage credit for $1,254.58 which her deceased husband, Plácido Muñoz, had acquired during their wedlock with community funds, the mortgage having been created by Baudilio Ayala Díaz and Ambrosia Fernández Resto, husband and wife, by a deed dated May 14, 1918, on a rural property of 20 acres situated in the ward of Caguitas, municipality of Aguas Buenas, containing a dwelling house made of wood and zinc and other buildings, and the mortgage being recorded in the said registry.

The registrar refused to record the mortgage according

to his decision of January 6, 1919, "for failure to exhibit the receipt showing the payment of the inheritance tax by the heirs of Plácido Muñoz y Muñoz, or any document showing exemption from the payment of said tax."

That decision is under consideration by virtue of an appeal taken therefrom.

For a better understanding of the law applicable to the case, we will transcribe the pertinent sections of the Political Code.

Section 368, Chapter III, Title IX, of the Political Code of Porto Rico, as amended by Act No. 62 of April 13, 1916, reads as follows:

"All real property within Porto Rico and any interest therein, whether belonging to inhabitants of Porto Rico or not, and all personal property belonging to inhabitants of Porto Rico which shall pass by will, by intestacy, by inheritance or by any grant whatsoever, made or intended to take effect in possession or enjoyment after the death of the grantor to any person, association, institution or corporation, in trust or otherwise, shall be subject to a tax as hereinafter provided; * * *   *And provided, further,* That no tax shall be collected upon the property passing to a wife, child, grandchild, or person legally recognized as an adopted child of a male decedent, when the same shall be valued at five thousand dollars or less; *And provided, further,* That when the value of such property * * * exceeds five thousand dollars the said five thousand dollars shall be deducted in ascertaining the tax thereon; and the remainder after making such deductions shall be considered as the value of the devise, bequest, legacy, grant or inheritance."

Section 372 reads as follows:

"It shall be the duty of every administrator, executor or trustee, or of any one of them acting in Porto Rico, and of every ancillary administrator, agent or person lawfully authorized to administer on the estate or any portion thereof in Porto Rico, sixty days after the death of the decedent whom he represents, to transmit to the Treasurer of Porto Rico a sworn notification of the death of said decedent, stating plainly: The name and residence of said decedent; the date of his death; whether dying intestate, and, if not, the notary with whom the will of such decedent is recorded; and, as nearly as pos-

sible, the amount, valuation, description and location of the estate of the decedent; the names and degrees of relationship of the heirs, devisees and legatees, and the proportionate parts and description of the estate accruing to each; the names of all administrators, executors or trustees of the estate of said decedent, and said notification shall be accompanied by a tax receipt in proof that the property tax  *  *  *  has been fully paid on said estate.  *  *  *."

Section 373 reads:

"Whenever it may be possible, the value of all estates of decedents shall be assessed by internal-revenue agents, and whenever the services of expert accountants are required for the purpose of appraising the estates of decedents the Treasurer is authorized to detail one or more of his employees for the purpose and to determine in accordance with section 369  *  *  *  the inheritance tax thereon  *  *  *  and the results of said appraisals shall be made known both to the Treasurer and to the administrators, executors and trustees of such estates."

Section 369, as amended and added to by Act No. 62 of April 13, 1916, establishes the tariff under which the tax should be levied and paid, and section 379 provides, among other things, that "no registrar shall record in any registry under his charge any instrument or judicial decision, ruling or warrant, drawn, rendered or issued in connection with the partition, distribution or delivery of such property (the property of the decedent) unless such receipt or receipts of the Treasurer be presented."

The receipts of the Treasurer to which section 379 refers are those which the Treasurer, in accordance with section 378, must issue in triplicate to the administrator, executor, trustee or person administering upon any estate subject to the tax provided for in section 369, upon the payment of said tax on said property.

Guided by the statutes above referred to, we must arrive at the conclusion that in order to record in the registry the mortgage credit in question, it was necessary to present, as the registrar maintains, the receipt or some document show-

ing the payment of the inheritance tax by the heirs of Plácido Muñoz.

It does not appear that the sworn notification of the death of Plácido Muñoz was transmitted to the Treasurer of Porto Rico within sixty days after his death, in the manner and form prescribed by section 372; therefore we are absolutely ignorant as to what properties were left by the decedent. We only know that he left a mortgage credit of $1,254.58 belonging to the conjugal partnership, but this does not show that he left no other properties. The inheritance tax must be assessed, not on a particular property alone, but on the whole of the estate in the manner indicated by section 373. The result of that assessment must be reported to the Treasurer of Porto Rico and to the administrators, executors and trustees of the said estate and such report will show whether or not an inheritance tax must be paid and the amount thereof according to the tariff established by section 369, subdivision 1, as amended by the Act of April 13, 1916.

The appellant alleges that the acquisition of the mortgage credit in question was not subject to the inheritance tax, considering the amount thereof and the manner in which it was to be distributed among the widow and the heirs, but this allegation is based on the hypothesis, not shown to be a fact, that the decedent, Plácido Muñoz, left no other properties. In any event, even supposing that there were no other properties, section 372 should have been complied with by furnishing to the Treasurer of Porto Rico the sworn statement therein required. If the mortgage credit should be recorded as requested, the interested persons might continue to ask for the recording of other properties and elude compliance with the intention of the legislature as to the payment of the inheritance tax.

The appellant also alleges that the present case does not fall within the injunction to registrars contained in section 379 of the Political Code because no decison is involved in connection with the partition, distribution or delivery of the

estate of the deceased. The designation of heirs under which the record is sought is the basis for the partition, distribution and delivery of the estate.

The decision must be

*Affirmed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.